UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

G & G CLOSED CIRCUIT EVENTS, LLC,

Plaintiff,

v.

ADELIO WALDEN and JERRY KEN WONG, individually and doing business as ISLANDERS a/k/a ISLANDER'S LOUNGE; and D & J BAR & GRILL LLC, doing business as ISLANDERS a/k/a ISLANDER'S LOUNGE,

Defendants.

No.  2:25-cv-1796 WBS AC

FINDINGS AND RECOMMENDATIONS

This case is before the court on plaintiff's motion for default judgment.  ECF No. 17.  The motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19).  For the reasons set forth below, the undersigned recommends plaintiff's motion be granted in part, and that judgment be entered in favor of plaintiff for a reduced damages award of $1,800.

**I.      Relevant Background**

Plaintiff filed its complaint on June 26, 2025 against (1) Adelio Walden and Jerry Ken Wong, each both individually and doing business as Islanders, a/k/a Islander's Lounge ("Islanders"); and (2) D & J Bar & Grill LLC ("D & J"), also individually and doing business as Islanders.  ECF No. 1.  Specifically, the Complaint identifies Walden and Wong as Islanders'

/////

1

Managers pursuant to the Statement of Information ("SOI") on file with the California Secretary of State.  ECF No. 1 at 4, 6; ECF No. 17-4 at 9.

The complaint alleges that on July 6, 2024, D & J "intercepted, received, and published" the *Last Man Standing: The Nate Diaz v. Jorge Masvidal Fight* telecast, including all interviews and game commentary (collectively "Program").  ECF No. 1 at 9-11.  The pending motion includes an affidavit from investigator Luke Orlando, who visited Islanders that day at 151 W. Alder St., Stockton, CA. 95204 ("Venue").  ECF No. 17-3 at 2.  Orlando witnessed one of the three 55"-65" television screens showing the Program, which the bartender confirmed once asked.  Id. at 2-3.  Orlando did not have to pay a cover charge to go inside, counted no more than 12 patrons present at any time, and estimated the Venue's maximum capacity was 50.  Id. at 4.

The Complaint alleges that plaintiff had exclusive rights to commercial distribution of the Program nationwide, yet defendants did not enter a sublicensing agreement authorizing them to broadcast the Program.  ECF No. 1 at 10; see also ECF No. 17-2 at 9-19 (License Agreement between Plaintiff and the promoter for the Program).  A "rate card" shows that plaintiff would have charged a $900 licensing fee for any business with a customer capacity of less than 100.  ECF No. 17-2 at 3, 21.

In a declaration attached to the pending motion, plaintiff's president Nicolas Gagliardi asserts that this conduct damages both plaintiff and its paying customers.  ECF No. 17-2 at 5.  He acknowledges that pirates like defendants do not usually advertise that they are exhibiting the program, except possibly by word of mouth.  Id. at 5-6.  Plaintiff has no evidence or reason to believe that the Venue or other pirate establishments raise food or drink prices on the nights they broadcast pirated programs.  Id. at 6.

Based on the unauthorized interception, publication, display, and exhibition of the Program, the complaint alleges violations of 47 U.S.C. § 553 *et seq.* and 47 U.S.C. § 605 *et seq.*, as well as conversion.[1]  ECF No. 1 at 9-14.

---

[1] Although the Complaint also states a claim under Cal. Bus. and Prof. Code § 17200 *et seq.*, the motion for default judgment does not seek relief under this claim.  ECF Nos. 1 at 15, 17 at 3.  In any case, this statute merely provides a cause of action for "any unlawful, unfair or fraudulent business act or practice", including acts made unlawful based on the statutes cited in other claims.

2

Plaintiff served all three defendants on July 25, 2025.  ECF Nos. 6-8.  Default was entered against all defendants on September 30, 2025.  ECF No. 13.  Plaintiff filed the pending motion for default judgment on November 18, 2025, and personally served it on defendants the same day. ECF No. 17-4 at 17.

## II.    Motion

Plaintiff moves for default judgment for $25,400 in damages, including $4,500 under 47 U.S.C. § 605(e)(3)(C)(i)(II), $20,000 under 47 U.S.C. § 605(e)(3)(C)(ii), and $900 for conversion.  ECF No. 17-1 at 12, 22.  Plaintiff also seeks leave to move for attorney's fees and costs within 14 days of entry of judgment.  Id. at 22.

## III.    Analysis

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court may consider the following factors:

> the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily disfavored.  Id. at 1472.

---

Cal. Bus. and Prof. Code § 17200.

3

Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's default conclusively establishes that party's liability, although it does not establish the amount of damages.  Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

   B.  Judicial Notice

A court may take judicial notice of facts that either are generally known within its jurisdiction, or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

In support of the motion, plaintiff requests judicial notice of the fact that the United States Census Bureau's website lists Stockton's 2020 population as 320,804.  ECF No. 17-1 at 21; UNITED STATES CENSUS BUREAU, https://data.census.gov/table?q=stockton,+California (last visited Feb. 23, 2026).  The court can take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet," such as websites run by governmental agencies.  Gerritsen v. Warner Bros. Ent. Inc., 112 F.Supp.3d 1011, 1033 (C.D. Cal. 2015) (internal citations omitted).  The request is granted, with the understanding that judicial notice does not extend to whether the population was in fact 320,804.

4

Plaintiff also requests judicial notice of D & J's Business Entity Detail Page on the California Secretary of State's Website (ECF No. 17-4 at 5-7); its September 2023 SOI, also on file with the California Secretary of State (id. at 9-10); and a June 2025 report from the California Department of Alcoholic Beverage Control on D & J's licenses (id. at 12-15).  The requests are granted.

C.  The Eitel Factors

1.  Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Here, plaintiff would suffer prejudice if the court did not enter a default judgment because it would be without recourse for recovery.  Accordingly, the first Eitel factor favors the entry of default judgment.

2.  Factors Two and Three: Merits of Claims and Sufficiency of Complaint

The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries.  The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175.  Here, the merits of the relevant claims and sufficiency of the complaint favor entry of default judgment.

a.  Communications Act of 1934

Plaintiff sues under 47 U.S.C. §§ 553 and 605.  Both sections are provisions of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-622.  Plaintiff acknowledges, however, that it may recover under only one of these sections and chooses to forego recovery under section 553.  ECF No. 17-1 at 8-9.

Section 605 "prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled thereto.'"  DirecTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008) (quoting 47 U.S.C. § 605(a)).  "[T]he 'communications' protected by § 605(a) include satellite television signals."  Id.

////

5

> [L]iability under section 605 requires proof that a defendant has "(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff."

California Satellite Systems v. Seimon, 767 F.2d 1364, 1366 (9th Cir. 1985) (quoting National Subscription Television v. S & H TV, 644 F.2d 820, 826 (9th Cir. 1981)).[2] Enhanced statutory damages are available if the violation was willful and for commercial or private financial gain. See 47 U.S.C. § 605(e)(3)(C)(ii).

The complaint alleges that plaintiff held the exclusive rights to broadcast the Program and sublicense such broadcasting rights. ECF No. 1 at 10; see also ECF No. 17-2 at 9-19 (License Agreement and Copyright Assignment Agreement between Fanmio, Inc. and plaintiff). It further alleges that defendants unlawfully intercepted the broadcast of the Program and showed it at their commercial Venue. ECF No. 1 at 4, 10-11. Defendants knew they lacked the authority to broadcast the Program without a sublicensing agreement from plaintiff, yet did so willfully and for purposes of commercial advantage and private financial gain. Id. at 10-11. Although the court must accept the complaint's allegations as true, plaintiff's motion includes an affidavit from an investigator who visited the Venue that day and could describe both the business and the Program he watched on one of its televisions. ECF No. 17-3. When combined with the complaint's allegations, taken as true pursuant to TeleVideo and Geddes, these documents establish Islanders' violation of 47 U.S.C. § 605.

The question then becomes whether Wong and Walden may be held liable for the violation of § 605 in their individual capacities. A defendant is vicariously liable and therefore jointly liable for a violation of § 605 if he "(1) . . . had a right and ability to supervise the infringing activities and (2) had an obvious and direct [] financial interest in those activities." J & J Sports Prods., Inc. v. Walia, Case No. 10-5136 SC, 2011 WL 902245 at *3, 2011 2011 U.S. Dist. LEXIS 26316 at *9 (N.D. Cal. Mar. 14, 2011). D & J's SOI lists both Wong and Walden as

---

[2]  Plaintiff here is not alleged to have "transmitted" the Program, but to have been the exclusive licensee at the time of defendants' transmission. ECF No. 1 at 10. It has standing to sue as an "aggrieved person" under the statute. See 47 U.S.C. § 605(d)(6) ("aggrieved person" includes "any person with proprietary rights in the intercepted communication").

Managers or Members.  ECF No. 17-4 at 9.  The complaint alleges that they therefore had the obligation to supervise the activities of D & J, including the unauthorized publication of the Program.  ECF No. 1 at 5, 7.  It further alleges that they either intentionally intercepted, received, and published the Program at Islanders or "specifically directed or permitted" employees to do so. Id. at 5, 8.  Both Wong and Walden had "an obvious and direct financial interest" in Islanders' activities, including the unlawful publication of the Program.  Id. at 5, 8.

Taking these well-pleaded allegations as true, in conjunction with the SOI, the undersigned finds them sufficient to establish vicarious liability for Hunter.  See, e.g., G & G Closed Cir. Events, LLC v. Pacheco, Case No.: 3:19-cv-1761-CAB-LL, 2020 WL 13469799 at *2, 2020 U.S. Dist. LEXIS 264753 at *6 (S.D. Cal. Jan. 7, 2020) (applying the above standard to hold individual owner/defendant vicariously liable for a 47 U.S.C. § 605 violation).

### b.  Conversion

A conversion claim requires that the plaintiff has "(1) ownership of or right to possess the property at time of conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by wrongful act, and (3) damages."  Bank of New York v. Fremont General Corp., 523 F.3d 902, 914 (9th Cir. 2008).

Here, Plaintiff has established exclusive ownership of the distribution rights to the Program via the License Agreement.  ECF No. 17-2 at 9-19.  Orlando's affidavit supports the complaint's allegation that defendants engaged in signal piracy by exhibiting the Program without a sublicense.  ECF No. 1 at 9-11; ECF No. 17-3 at 2-3.  Plaintiff therefore suffered financial loss via the sublicensing fee that it would have otherwise charged.  The affidavit observed no more than 12 patrons in a Venue with an estimated capacity of 50 people.  ECF No. 17-3 at 4.  The rate card for the Program lists a sublicensing fee of $900 for a capacity of 1-100 people.  ECF No. 17-2 at 21.  Plaintiff has thus established damages for conversion in the amount of $900.  See Joe Hand Promotions, Inc. v. Dhillon, Case No. 2:15-cv-1108-MCE-KJN, 2015 WL 7572076 at *6, 2015 U.S. Dist. LEXIS 159638 at *10 (E.D. Cal. Nov. 25, 2015).  Thus, Plaintiff has successfully established a claim for conversion.

/////

c.  Conclusion

Plaintiff has demonstrated the elements of both claims under which it now seeks default judgments.  The second and third factors favor entry of default judgment.

3.  Factor Four: The Sum of Money at Stake in the Action

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct.  Plaintiff moves for default judgment for $25,400 in damages, including $900 for conversion, $4,500 in statutory damages under the Communications Act, and $20,000 in enhanced damages under the Communications Act.  ECF No. 17-1 at 12, 22.  Plaintiff also seeks leave to move for attorney's fees and costs within 14 days of entry of judgment.  Id. at 22.

Although plaintiff seeks a moderate sum, courts are granted discretion in awarding damages.  The undersigned declines to recommend judgment in the amount requested, for reasons discussed below.  See infra III.D.  Based on the modified damages amount, this factor favors entry of default judgment.

4.  Factor Five: Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims.  The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177.  In any case, plaintiff's motion also includes evidence supporting several key allegations, including Orlando's affidavit asserting that the Venue did exhibit the Program.  See ECF No. 17-3 at 2-3.  This factor favors entry of default judgment.

/////

/////

8

### 5. Factor Six: Whether Default Was Due to Excusable Neglect

Upon review of the record before the court, there is no indication that the default was the result of excusable neglect. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Plaintiff served the defendants with the summons and complaint by substitute service. ECF Nos. 6-8. Moreover, plaintiff personally served defendants with notice of its application for default judgment on the same day it was filed. ECF No. 17-4 at 17. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendants failed to defend in this action. Thus, the record supports a conclusion that the defendants have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

### 6. Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

### 7. Conclusion: Propriety of Default Judgment

Upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendants. What remains is the determination of the terms of judgment.

### D. Terms of Judgment

#### 1. Damages Under 47 U.S.C. § 605

Plaintiff does not allege any amount of actual damages under the Communications Act of 1934. When a prevailing plaintiff elects not to recover actual damages suffered from a violation of Section 605, the court shall award between $1,000 and $10,000 in statutory damages as it

considers just.  See 47 U.S.C. § 605(e)(3)(C)(i)(I), (II).  The court may also award up to $100,000 in enhanced statutory damages if the violation was willful and for commercial or private financial gain.  See 47 U.S.C. § 605(e)(3)(C)(ii).

                a.    Statutory Damages

District courts consider many factors in assessing statutory damages under the Communications Act.  Courts should assess an amount sufficient to deter but not so great as to destroy the defendant business.  See Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999).  The amount of money the defendant would have had to pay the plaintiff to broadcast the program lawfully is also relevant.  Id.  An enhanced statutory damages award may be warranted where the defendant engaged in promotional advertising or charged a premium for food or drinks.  J & J Sports Productions, Inc. v. Sorondo, Case No. 1:11-cv-00411-AWI-SMS, 2011 WL 3917391 at *4, 2011 U.S. Dist. LEXIS 99951 at *10 (E.D. Cal. Sep. 5, 2011).  It is also relevant whether the customers were present primarily to watch the broadcast or had come for another purpose while the program was being aired, and whether the defendants were "repeat offenders."  Sorondo, 2011 WL 3917391 at *4, 2011 U.S. Dist. LEXIS 99951 at *11.  The statutory maximum award is inappropriate "in the absence of unusual or particularly egregious circumstances under which a defendant broadcast the fight[.]"  Don King Productions/Kingvision v. Maldonado, Case No. C-97-3530 WHO MED, 1998 WL 879683 at *1, 1998 U.S. Dist. LEXIS 20165 at *3 (N.D. Cal. Dec. 10, 1998).  In past cases, the undersigned and other magistrate judges in this district have considered and weighed some or all of these factors, and have recommended awards of statutory damages according to the totality of the relevant circumstances.

Plaintiff seeks $4,500 in statutory damages, five times the commercial licensing fee it would have charged the Venue to exhibit the Program.  See supra at III.C.2.b; ECF No. 17-1 at 18; ECF No. 17-2 at 21; ECF No. 17-5 at 2.  Plaintiff cites Joe Hand Promotions, Inc. v. Dang My Linh, in which the court bypassed the "mathematical approach or the consideration of aggravating factors" to award the maximum $10,000 in statutory damages.  ECF No. 17-1 at 17-18 (quoting No. CV063548BMCKAM, 2006 WL 8435988 at *2, 2006 U.S. Dist. LEXIS 68714 at *3-4 (E.D.N.Y. Sept. 25, 2006)).  The court concluded that when a plaintiff chooses to both

violate the Communications Act and ignore court process by defaulting, the maximum amount of statutory damages should be awarded "absent any indication in the record of mitigating circumstances." Dang My Linh, 2006 WL 8435988 at *2, 2006 U.S. Dist. LEXIS 68714 at *5. The undersigned finds the reasoning of this case to be unpersuasive,[3] and instead follows the well-established practice of judges in this district and other district courts in the Ninth Circuit.

Plaintiff's President Gagliardi acknowledges that no evidence suggests defendants charged a cover charge or increased food and drink prices the day that they broadcasted the Program. ECF No. 17-2 at 6. Orlando also confirms that he did not pay a cover charge when he entered the Venue to watch the Program, which was on only one out of three 55"-65" screens. ECF No. 17-3 at 2. He counted the number of patrons three separate times and never counted more than 12 people, whereas the Venue's capacity was likely 50. Id. at 4. Finally, Gagliardi admits that defendants did not seem to advertise that the Venue would exhibit the Program, at best relying on word of mouth. ECF No. 17-2 at 5-6. Plaintiff has failed to demonstrate that any aggravating factors apply.

In exercising its discretion, the court will recommend an award of statutory damages in the amount of $900 – the amount defendants would have paid for a license. This amount is proportional to the violation, while serving as a deterrence of future violations as Section 605 intended. In addition, it aligns roughly with statutory damages awarded in similar circumstances in this district. See G & G Closed Circuit Events, LLC v. Barajas-Quijada, Case No. 1:19-cv-1259 AWI JLT, 2020 WL 64782 at *5, 2020 U.S. Dist. LEXIS 2423 at *12 (E.D. Cal. Jan. 7, 2020) (recommending "award of $5,600—which is twice the cost of a proper sublicense" where 54 patrons were present, defendant advertised, and collected a cover charge); J & J Sports Productions, Inc. v. Carranza, Case No. 1:15-CV-1041 TLN SMS, 2015 WL 12681674 at *2, 2015 U.S. Dist. LEXIS 172691 at *7 (E.D. Cal. Dec. 29, 2015) ("plaintiff has not demonstrated

---

[3] The court in Dang My Linh speculated that defendants' conduct (regarding publicity, frequency if pirating, etc.) may have been more egregious than plaintiffs or the court could know in the absence of an appearing defendant. The court then effectively adopted a rebuttable presumption that maximum statutory damages are appropriate in the case of default. This ignores the practical reality that defendants with lesser culpability may choose to default where the costs of defense would exceed likely liability.

11

any damages greater than the loss of the $1,400 licensing fee and the facts do not warrant statutory damages in excess of $1,400"); Integrated Sports Media, Inc. v. Naranjo, Case No. 1:10-CV-00445, 2010 WL 3171182 at *6, 2010 U.S. Dist. LEXIS 81264 at *18 (E.D. Cal. Aug. 11, 2010) (awarding $1,000 in statutory damages without enhanced damages where the capacity of the restaurant was forty, the number present ranged from 12 to 20, no admission fee was charged, and the program was displayed on a single television).

b.   Enhanced Damages

Plaintiff seeks $20,000 in enhanced statutory damages.  ECF No. 17-1 at 15; ECF No. 17-5 at 2.  Gagliardi asserts that based on the technology used to encrypt broadcasts like the program, defendants cannot accidentally pirate the Program and must have done so willfully.  ECF No. 17-2 at 3-5.  While it is true that the complaint's factual allegations are taken as true, the same cannot be said for allegations relating to damages.  Geddes, 559 F.2d at 560 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

As discussed above, defendants neither advertised that they were exhibiting the Program nor increased cover charges or food and drink prices on that day.  ECF No. 17-2 at 5-6; ECF No. 17-3 at 2.  At no point does plaintiff allege that defendants are repeat offenders.  Plaintiff cites out-of-circuit authority, Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc., 920 F.Supp.2d 659, 668-69 (E.D. Va. 2013), to argue that defendants inherently acted for purposes related to commercial advantage or private financial gain.  ECF No. 17-1 at 19.  Even in that case, however, the restaurant showed the program at issue on all six of its televisions, instead of only one of the three as in this venue.  ECF No. 17-3 at 2; Wing Spot, 920 F.Supp.2d at 668.

Plaintiff then argues that the Ninth Circuit has endorsed the use of low five-figure judgments to deter violations of the Communications Act without destroying defendant businesses.  ECF No. 17-1 at 21 (citing Lake Alice Bar, 168 F.3d at 349-50).  This opinion is not on point.  The favorable reference to a low five-figure judgment was contrasting this against a "high five figure judgment [that] puts a bar out of business[,]" such as the damages award the

12

district court decided to amend. Lake Alice Bar, 168 F.3d at 350. Nothing about the facts of the present case support a five-figure judgment of any size.

Due to the lack of other factors suggesting willfulness, enhanced damages are unwarranted.

### 2. Damages for Conversion

Plaintiff seeks $900 in damages for conversion, based on the amount the Venue would have had to pay to sublicense the pirated Program. ECF No. 17-1 at 22. As discussed above, the awarded statutory damages under 47 U.S.C. § 605 also reflect this fee. See supra at III.D.1.a. Some judges in this district have declined to award both statutory damages and damages for conversion. See, e.g., Barajas-Quijada, 2020 WL 635264 at *4, 2020 U.S. Dist. LEXIS 23828 at *11 (E.D. Cal. Feb. 10, 2020) ("this Court has repeatedly declined to award damages for conversion in addition to statutory damages for the same wrong"); J & J Sports Productions, Inc. v. Carranza, Case No. 1:15-cv-1041 TLN SMS, 2015 WL 12681674 at *3, 2015 U.S. Dist. LEXIS 172691 at *9 (E.D. Cal. Dec. 29, 2015) ("Damages awarded under section 605 sufficiently compensate Plaintiff. Additional damages for conversion are not recommended."). However, other judges in this district have reached the opposite conclusion and awarded statutory damages under § 605 and damages for the California state tort of conversion. See, e.g., G & G Closed Cir. Events, LLC v. Saddeldin, No. 1:10-CV-00062-AWI-SK, 2010 WL 303645, at *4, 2010 U.S. Dist. LEXIS 77585 at *12 (E.D. Cal. Aug. 2, 2010) (awarding $40,000 in statutory damages and $800 for conversion); Joe Hand Promotions, Inc. v. Dhillon, No. 2:15-cv-1108-MCE-KJN, 2015 WL 7572076 at *6, 2015 U.S. Dist. LEXIS 159638 at *17 (E.D. Cal. Nov 25, 2015) (awarding $4,000 in statutory damages and $750 for conversion); G & G Closed Cir. Events, LLC v. Olvera, No. 2:18-CV-02467-MCE-AC, 2020 WL 1503376 at *5, 2020 U.S. Dist. LEXIS 55148 at *10 (E.D. Cal. Mar. 30, 2020) (awarding $60,000 in statutory damages and $12,500 for conversion). In this case, the court finds it is appropriate to award conversion damages in the amount of $900.

/////

/////

13

## IV.    Conclusion

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 17) be GRANTED in part and judgment be entered for plaintiff;

2. The court award to plaintiff statutory damages in the amount of $900 for the violation of 47 U.S.C. § 605 and $900 in damages for the tort of conversion;

3. That plaintiff be granted 14 days from the entry of judgment to submit its motion for costs and attorneys' fees; and

4. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED:  March 3, 2026.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

14